IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| JOHN AND JANE DOE, | * | |
| v. | * | Civil No. JFM-15-00074 |
| BOARD OF EDUCATION OF WASHINGTON COUNTY, *et al* | * | |

******

**MEMORANDUM**

Plaintiffs John and Jane Doe, individually and as parents and next friends of their minor child, J.D., bring this lawsuit against the Board of Education of Washington County, Maryland ("the Board") and Adam K. Robinson (collectively "defendants"), alleging that they violated J.D.'s civil rights and are responsible for the severe personal injuries he sustained. Plaintiffs seek relief under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq*; Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 *et seq*; and Maryland tort law.

Defendants have filed a pending joint motion to dismiss all of plaintiffs' claims against Robinson and several of their claims against the Board. The motion is fully briefed, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons set forth below, the motion to dismiss is granted in part and denied in part.

**BACKGROUND**

During the time period relevant to plaintiffs' claims, September 2011–January 2012, J.D. was enrolled in eighth grade at E. Russell Hicks Middle School in Washington County. (Am.

Compl., ECF No. 15-1 ¶ 8).[1]  That fall was J.D.'s first semester at Hicks Middle School because he and plaintiffs had recently moved to Washington County.  (*Id.* ¶ 7).  J.D. had been enrolled in special education programs since kindergarten because of his documented intellectual disabilities, reflected by low scores on cognitive ability tests.  (*Id.* ¶ 6).  J.D. is required to have an Individualized Education Program ("IEP") prepared and implemented by his school which documents his disabilities and develops goals and a curriculum tailored for him.  Ms. Doe met with J.D.'s IEP team at Hicks Middle School in the fall of 2011 where it was decided that J.D. would be placed in all special education classes except for gym class and lunch.  (*Id.* ¶ 10).  During J.D.'s eighth grade school year, Robinson was an Assistant Principal at Hicks Middle School.  (*Id.* ¶11).

Only weeks into the school year—in September 2011—students at Hicks Middle School began bullying J.D.  Plaintiffs were told that J.D. was intentionally hit on the head by another nondisabled student during gym class because J.D. was a "special needs student."  (*Id.* ¶ 12).  J.D. continued to be bullied, typically in the hallway while he walked between classes.  In response, defendants decided to allow J.D. to leave classes early to access his locker before the other students left class.  Not all of J.D.'s teachers were informed, however, and accordingly he was still confronted and bullied.  (*Id.* ¶ 13).  Plaintiffs met personally with Robinson in November 2011, where he expressed concern about J.D. being the victim of bullying and in particular noted the potential danger of the lunch room because the size and layout prevented constant supervision by the teachers.  (*Id.* ¶ 16).  Robinson offered to allow J.D. to eat lunch in Robinson's office to avoid the lunchroom; an arrangement that continued through the winter recess at the end of December 2011.  (*Id.* ¶¶ 16–17).

---

[1] Although the amended complaint was filed after the motion to dismiss, the amended complaint only changed the numbering of the paragraphs.  Accordingly, the motion to dismiss remains ripe.

In January 2012, however, without plaintiffs' knowledge, J.D. began eating in the cafeteria with the other students. (*Id.* ¶ 18). On January 30, 2012 around 12:15, a group of students convinced J.D.—who was allegedly known as willing "to do things" if asked—to provoke a student "known to be violent." J.D. complied based on his comprehension issues and desire to be accepted. (*Id.* ¶ 19). The student who J.D. provoked was indeed violent and proceeded to viciously attack J.D. while he lay on the ground without the supervising teachers' knowledge. The student continued to kick J.D. in the head while wearing steel-toe boots until another student intervened. (*Id.* ¶ 20). J.D. was transported to a hospital for treatment, where he was diagnosed with a concussion, facial lacerations, and a fractured orbital socket. J.D. suffered a traumatic brain injury which caused numerous permanent injuries ranging from headaches to light sensitivity, binocular vision disorder, convergence insufficiency, ocular motor palsy, accommodative disorder, diplopia, asthenopia, left visual spatial neglect, quadrantanopia, and visual processing impairment. (*Id.* ¶ 20).

Plaintiffs filed a complaint in this court on January 9, 2015, seeking monetary relief under the ADA, Section 504 of the Rehabilitation Act, and Maryland tort law against the Board and Robinson for violations of J.D.'s civil rights and the personal injuries he sustained from the January 30, 2012 incident. Defendants filed a motion to dismiss, which argues that all claims against Robinson and several against the Board should be dismissed. (ECF No. 6).

## STANDARD

When ruling on a motion brought under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are

substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim . . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (internal citations and quotation marks omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Plaintiffs' amended complaint contains four counts, all against both defendants: violation of the ADA (Count I), Section 504 (Count II), negligence (Count III), and gross negligence (Count IV). This section is organized by defendant rather than by count to more efficiently address the merits of the motion to dismiss.

As an initial note, defendants agree that the January 30, 2012 incident is within the applicable three-year statute of limitations, Md. Code Ann., Cts. & Jud. Proc. §5-101. They nonetheless argue, however, that all factual incidents outside the statute of limitations "are time-

barred." (ECF No. 6-1 at p. 7). I disagree. The Supreme Court has clearly held that as long as the claim for relief is timely, a plaintiff may use "prior acts as [relevant] background evidence in support of a claim." *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112–13 (2002). Because plaintiffs cite facts from September 2011–January 2012 to provide relevant background and context, I will consider them as such. *Cf. Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 870 (9th Cir. 2014) ("A claim under the [Rehabilitation] Act will not be untimely merely because similar, even identical, violations of the Act occurred outside the statutory period.").

### I. Claims Against Robinson.

Robinson moves to dismiss all four counts against him. Each is discussed below.

#### A. ADA and Section 504 claims.

Robinson moves to dismiss plaintiffs' two federal statutory causes of action against him—counts I and II—by arguing that neither statute contemplates personal liability. Plaintiffs agree that Robinson cannot be liable in his individual capacity, but claim that they seek relief against Robinson in his official capacity. Because that would duplicate their federal claims against the School Board, I will dismiss counts I and II against Robinson.

Courts in this District have routinely held that neither the ADA or Section 504 provide for "personal liability" or "individual liability," respectively. *See, e.g.*, *Young v. Barthlow*, Civ. No. 07-552, 2007 WL 5253983, at *2 (D. Md. Nov. 7, 2007), *aff'd*, 267 F. App'x 250 (4th Cir. 2008). Plaintiffs insist that their federal statutory claims against Robinson remain viable, however, because they allege violations while Robinson acted in his official capacity as Assistant Principal. *See, e.g.*, *Adams v. Montgomery Coll. (Rockville)*, 834 F. Supp. 2d 386, 396 (D. Md. 2011) (characterizing a claim against a state official in his official capacity as "a suit against the

official's office") (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (internal quotation marks omitted)). Although official-capacity claims are treated differently than individual-capacity claims, that distinction is not helpful to plaintiffs here.

That is because several courts—including the *Adams* court cited above—have dismissed ADA and Section 504 claims against individuals in their official capacity when the same claims are also brought against the government entity that employs them. *See Adams*, 834 F. Supp. 2d at 396 ("But as established above, Plaintiff states a valid cause of action under the ADA against the College. There is thus no need to pursue a claim against Defendants . . . in their official capacities."); *see also Munoz v. Balt. Cnty., Md.*, Civ. No. 11-2693, 2012 WL 3038602, at *5 (D. Md. July 25, 2012) (dismissing as "redundant" plaintiff's claims against individual supervisors in their official capacities). I am persuaded by the reasoning of those courts. Because plaintiffs' claims for relief under the ADA and Section 504 against the Board are identical to those against Robinson, and those claims remain viable (discussed further below, *infra*, Section II.A), Counts I and II as to Robinson are dismissed.

**B. Plaintiffs have not adequately pleaded a claim for gross negligence.**

Count IV of plaintiffs' amended complaint alleges that Robinson's conduct constitutes gross negligence under Maryland law. Courts have utilized slightly different language to describe gross negligence, but all agree that it is a demanding standard. *See Doe v. Bd. of Educ. of Prince George's Cnty.*, 982 F. Supp. 2d 641, 658–59 (D. Md. 2013) ("Gross negligence connotes wanton and reckless disregard for others.") (internal quotation marks omitted); *Wells v. State*, 642 A.2d 879, 885 (Md. Ct. Spec. App. 1994) ("[M]alice, evil intention, or wanton, willful, or reckless disregard for human life or the rights of others."); *Foor v. Juvenile Services Admin.*, 552 A.2d 947, 956 (Md. Ct. Spec. App. 1989) ("[S]o utterly indifferent to the rights of

6

others that he acts as if such rights did not exist."). As alleged by plaintiffs, Robinson's conduct does not meet this high bar.

Viewing the allegations in a light most favorable to plaintiffs, Robinson failed to reasonably prevent the January 30 assault of J.D. despite being aware of the ongoing bullying of J.D., plaintiffs' concerns, and Robinson's knowledge that having J.D. eat in his office was an effective solution from November–December 2011. Plaintiffs have failed, however, to allege facts which demonstrate the necessary "wanton and reckless disregard," "malice," and "utter[] indifferen[ce]" necessary under Maryland law. This is best demonstrated by comparing these facts to similar cases. In *Doe v. Bd. of Educ. of Prince George's Cnty.*, the plaintiffs argued that the school board's and vice principal's "utter indifference" to the plaintiff-student's rights caused and allowed ongoing sexual assault. The *Doe* court disagreed, holding that although defendants ultimately failed to protect the student, the steps they did take foreclosed any plausible claim that they were "utterly indifferent." *Doe*, 982 F. Supp. 2d at 659 (describing defendants' acknowledgment that the student had a right to be safe and free from harassment, their investigation of certain incidents, and the fact that they "took steps to remedy the harassment"); *see also Nkemakolam v. St. John's Military Sch.*, 890 F. Supp. 2d 1260, 1263 (D. Kan. 2012) (holding that Principal's failure to protect student despite promising he would and prior knowledge of certain students' "dangerous propensities" was not a plausible claim for gross negligence). Here, likewise, Robinson met with plaintiffs, expressed concern about J.D. and offered a solution that worked for several months. Those actions preclude plaintiffs from meeting the necessary threshold to move their gross negligence claim forward. Count IV of their complaint is accordingly dismissed as to Robinson.

### C. Robinson cannot be liable for negligence pursuant to the Coverdell Act.

In addition to alleging gross negligence, plaintiffs claim in Count III that Robinson negligently addressed J.D.'s bullying which culminated in his January 30 beating and corresponding debilitating injuries. Rather than contest the merits, Robinson argues in response that he cannot be liable because of statutory immunity under the Paul D. Coverdell Teacher Protection Act of 2001, 20 U.S.C. § 6736(a). Based on the text of the statute as well as the limited case law interpreting it, I conclude that Robinson is immune from plaintiffs' negligence claim and accordingly dismiss Count III as to him.

As a preliminary matter, plaintiffs are correct to note that immunity under the Coverdell Act is an affirmative defense in which Robinson bears the burden of proof. Moreover, Rule 12(b)(6) motions "generally cannot reach the merits of an affirmative defense" because the only relevant "facts" are allegations in the plaintiff's complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). The *Goodman* court went on to hold, however, that there are "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint" and, therefore, a court can rule on an affirmative defense at the Rule 12(b)(6) stage. *Id.* This case is one of those situations, as evidenced by other courts which have addressed a Coverdell Act defense while ruling on a motion to dismiss. *See, e.g.*, *Dennis v. Bd. of Educ. of Talbot Cnty.*, 21 F. Supp. 3d 497, 502 (D. Md. 2014).

Addressing the merits of Robinson's defense, the Coverdell Act immunizes any "teacher" (including a principal or administrator) "for harm caused [to a student] by an act or omission of the teacher on behalf of the school if" five conditions are met. 20 U.S.C. § 6736(a)(1)–(5). Of those five, plaintiffs contest two—the second element, which requires that the alleged unlawful conduct be taken "in furtherance of efforts to control, discipline, expel, or suspend a student or

maintain order or control in the classroom or school"; and the fourth element, which requires the conduct not constitute "gross negligence, reckless misconduct, or a conscious, flagrant indifference to the rights or safety of the individual harmed by the teacher."

Plaintiffs first argue that Robinson's alleged acts and omissions were not carried out "in furtherance of efforts to control, discipline . . . or maintain order or control in the classroom or school." Because § 6736(a) clearly encompasses acts *and* omissions, the fact that plaintiffs allege Robinson failed to take steps to protect J.D. does not by itself prevent granting Robinson immunity. Instead, the legal question here is whether the *type* of actions Robinson did or did not take were done "in furtherance" of maintaining order and discipline. Certain cases would obviously fit the statutory text, like a teacher accidently injuring a student while intervening to break up a fight. I conclude that § 6736(a)(2) is sufficiently broadly worded to also encompass the facts here. Robinson's alleged acts and omissions only concerned J.D.'s safety and Robinson's ultimate failure to protect J.D. from the bullying which culminated in his severe injuries. Conduct designed to prevent bullying is certainly tied to the overall goal of maintaining order and control. Indeed, the fact that J.D. was beaten so severely, allegedly in the middle of the lunch room, suggests that reasonable control and order was lacking. Accordingly, Robinson's alleged acts and omissions regarding J.D. are the kind intended to be protected by the Coverdell Act as evidenced by its text. *See Nkemakolam*, 890 F. Supp. 2d at 1263 (granting the President of the school Coverdell immunity based on plaintiffs' allegation that he "failed to supervise and control the conduct of students at the school").

Next, plaintiffs argue that Robinson's conduct does not satisfy § 6736(a)(4) because it constitutes gross negligence. As was discussed above, however, in Section I.B, *supra*, plaintiffs' gross negligence claim does not sufficiently plead a claim to relief. Just as plaintiffs cannot

maintain an independent gross negligence claim, neither can they cite gross negligence to prevent immunizing Robinson under the Coverdell Act.

In conclusion, the facts alleged by plaintiffs sufficiently prove that Robinson is entitled to immunity under the Coverdell Act.[2] The decisions he made on whether to act, or not act, are the kind intended to be protected by this federal statute. Robinson, therefore, cannot be liable for negligence and Count III of plaintiffs' amended complaint is dismissed as to him.

## II. Claims Against the School Board.

The Board only moves to dismiss Counts I, II, and IV against it. Each is discussed in turn below.

### A. Plaintiffs were not required to exhaust their federal statutory claims.

The Board argues that plaintiffs were required to administratively exhaust their ADA and Section 504 claims pursuant to the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1415(1), but failed to do so. I conclude that plaintiffs were not required to exhaust their claims and accordingly deny the Board's motion to dismiss Counts I and II.

Whenever a lawsuit involves the treatment a disabled child received while at school, the IDEA is implicated. The IDEA is a comprehensive statute that "provides a panoply of procedural rights to parents to ensure their involvement in decisions about their disabled child's education." *Sellers v. Sch. Bd. of City of Manassas*, 141 F.3d 524, 527 (4th Cir. 1998). Concerns and complaints about the disabled child's education can be raised, but must be heard

---

[2] Although not raised by plaintiffs, it is worth noting that their case likely does not fall within one of the statutory exceptions to the Coverdell Act's limitations on liability. The exception closest to this case is (C), which precludes immunity for conduct "been found to have violated a Federal or State civil rights law." § 6736(d)(1)(D). Because Robinson cannot be liable under the ADA or Rehabilitation Act, however, there is no "civil rights law" violation alleged by plaintiffs—only Maryland common law. The Coverdell Act was enacted precisely to "target tort . . . causes of action that may, for whatever reason, find their way into federal court." *Dennis*, 21 F. Supp. 3d at 502.

"by the State educational agency or by the local education agency, as determined by State law." 20 U.S.C. § 1415(f)(1)(A); *see also M.M. v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 535 (4th Cir. 2002) ("It is clear that, under the IDEA, parents asserting a violation of the IDEA must first request a due process hearing."). Although relief for violations of a disabled child's rights may be available under multiple statutes, the IDEA expressly requires exhaustion of claims under "other Federal laws protecting the rights of children with disabilities . . . seeking relief *that is also available under this subchapter.*" 20 U.S.C. § 1415(l) (emphasis added). Plaintiffs need not exhaust their claims, however, if "the administrative process would have been futile." *MM ex rel. DM*, 303 F.3d at 536. Accordingly, the question presented here is whether plaintiffs' ADA and Section 504 claims triggered § 1415(l)'s exhaustion requirement or, alternatively, exhaustion would have been futile and thus not necessary. Courts in this District have not reached a consensus, nor has the Fourth Circuit ruled on this issue. Based on my interpretation of § 1415(l), plaintiffs have the better argument.

My conclusion is based on the injury alleged by plaintiffs and the type of remedy sought to redress it—personal injuries and monetary damages, respectively. As one court recently articulated, "the principal form of relief under the IDEA is *prospective* benefits, in the form of education accommodations." *Reid v. Prince George's Cnty. Bd. of Educ.*, 60 F. Supp. 3d 601, 606 (D. Md. 2014). The procedural safeguards provided by the IDEA are designed to allow parental involvement with their child's ongoing education, and envisions parents and the school jointly addressing problems that arise. The IDEA is necessarily forward-looking, and is not "a forum for tort-like claims of educational malpractice." *Sellers*, 141 F.3d at 527. Accordingly, the "IDEA does not provide for compensatory or punitive damages." *Id.* at 525. That form of relief, however, is precisely what plaintiffs are seeking in this case because J.D.'s injuries have

already been sustained. Although his parents obviously desire to prospectively prevent such harm from occurring again, their complaint in this case is focused solely on the past. Moreover, plaintiffs are seeking compensation for personal injuries, not an educational injury. The IDEA encompasses only the latter.

Because monetary relief is unavailable under the IDEA, exhaustion of plaintiffs' ADA and Section 504 claims would be futile and, therefore, was not required in this case. *See Reid*, 60 F. Supp. 3d at 608 (holding that because monetary compensation "is something the IDEA simply cannot provide, requiring [plaintiff] to use, much less exhaust, the IDEA administrative procedures would be an exercise in futility"); *see also McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 569 (7th Cir. 2004) (holding that plaintiff was not required to exhaust his damages claim to compensate for his "permanent physical injuries that will reduce the quality of his life" because that physical injury "is not educational; no change to his IEP could remedy, even in part, the damage done").[3] Accordingly, the Board's motion to dismiss Counts I and II as to it is denied.

### B. Plaintiffs have not adequately pleaded a claim for gross negligence.

The Board also moves to dismiss plaintiffs' gross negligence claim against it (Count IV) for two reasons: procedurally, plaintiffs abandoned this claim by failing to respond in their

---

[3] *But see Wright v. Carroll Cnty. Bd. of Educ.*, Civ. No. 11-3103, 2012 WL 1901380 (D. Md. May 24, 2012). Although the *Wright* court reached the opposite conclusion on somewhat similar facts, one of the cases it cited in support is distinguishable—*S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 642 (6th Cir. 2008). The *S.E.* plaintiffs' Section 504 claim specifically implicated the disabled student's educational plan, which is precisely the kind of procedural issue encompassed by the IDEA. *S.E.*, 544 F.3d at 633 (noting that plaintiffs alleged the School Board "routinely, consistently, and purposefully failed to implement the components of" the disabled child's educational plan"). Here, in contrast, plaintiffs make no allegations regarding the quality of J.D.'s education—they focus solely on defendants' alleged failures which resulted in J.D.'s personal injuries.

response in opposition brief, and substantively, their claim fails on the merits for the same reasons it did as to Robinson. I agree with the School Board on its substantive argument and accordingly dismiss Count IV as to it.

The Board first attempts to dismiss Count IV by claiming that plaintiffs abandoned this claim when they failed to address it in their response in opposition brief. *See, e.g.*, *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to this argument, the plaintiff abandons [that] . . . claim."). Although plaintiffs did focus the gross negligence section of their response brief solely on Robinson, that was arguably done in response to defendants' similar focus on Robinson's conduct in its brief accompanying the motion to dismiss. Defendants argued why Robinson's conduct did not rise to the high standard of gross negligence—on which I agree—but only mentioned the Board in the subheading title. There were no arguments regarding the Board, therefore, for plaintiffs to respond to. Rather than deem plaintiffs' claim abandoned, I will assume that the omission of any specific arguments and facts against the Board indicates that plaintiffs' gross negligence claim against the Board is based on a respondeat superior or vicarious liability theory.

As described above, however, I conclude that plaintiffs have not adequately pleaded a plausible claim that Robinson was grossly negligent. His alleged conduct does not rise to the high standard characterized by courts as requiring a showing of malice, evil intention, utter indifference, and reckless disregard. Absent a claim against Robinson, plaintiffs' claim against the Board also necessarily fails. Count IV is also dismissed as to the Board.

## CONCLUSION

For the aforementioned reasons, defendants' motion to dismiss is granted in part and denied in part. Plaintiffs' claims against Robinson are all dismissed, and Count IV is dismissed as to the Board.[4]

| | |
|---|---|
| 08/06/2015 | /s/ |
| Date | J. Frederick Motz |
| | United States District Judge |

---

[4] Plaintiffs concede that their recovery is limited to $100,000 if the Board is found negligent under Count III. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-518(b). Moreover, plaintiffs cannot recover punitive damages because the only claim for which they were available—gross negligence—is dismissed. Finally, plaintiffs acknowledge that attorneys' fees are only recoverable under the ADA and Rehabilitation Act.